UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
Southeastern Division

| | |
|---|---|
| **TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,**<br><br>Plaintiff,<br><br>vs.<br><br>**PEAK AND PRAIRIE HOMES, LLC,**<br><br>Defendant. | Case No.: 3:14-cv-00030-RRE/KKK<br><br>**DEFENDANT, PEAK AND PRAIRIE HOMES, LLC's RESPONSE TO PLAINTIFF'S MOTION IN LIMINE** |

[¶] The Plaintiff has moved this court for an Order regarding five different Motions in Limine. In response to Plaintiff's Motions in Limine, the Defendant, Peak and Prairie Homes provides as follows:

A. Background

[¶] Travelers initiated a claim against the Defendant (hereinafter Peak and Prairie) seeking damages that resulted from a fire in a modular home in Dickinson, North Dakota. Defendant acknowledges that the fire was caused because the manufacturer of the home shipped the home with a significant dangerous condition existing that violated applicable electrical codes. *Expert report of Mike Rollis, p.6.* In fact, a fixture had been placed near and in flammable material with a high energy light bulb screwed into the fixture and two switches set to the on position. *Id.* Additionally, the flammable material that the fixture was located in also consisted of insulation which heated the high energy light bulb to a temperature beyond normal.

[¶] It is also undisputed that the location of this fixture was not indicated on any of the electrical drawings that were produced and provided by the General Contractor at this project to the Defendant. The fixture was also located in the crawl space and could

1

not be seen by anyone in the attic. *Jones deposition pg 49, lns 20-24.* Instead, the only way anyone would know of the existence of this fixture existing in this dangerous condition was if someone used an access hole that the fixture, wiring and switch had been laid into for shipment. *Id.* This access hole was located in an area that was well known by the manufacturer not to be used by any set up crew. *Jones pg 47-48.*

It is also not disputed that the location of this light fixture had been changed from the original plan. Originally, the attic light fixture was located in an area near the garage, that was partially open to the garage and could be seen from the garage. *Jones pg 42, lns 10-17; Ex. 4 and 43, lns 1-9.*

[¶]     On the day of the fire, the owner of Peak and Prairie was advised that electricity had been supplied to the house by the local utility. *Rasmussen @ pg 95, lns 3-5.* Intending to do work on the interior of the house the next day, on the evening of the fire, he went to the house and flipped the main power breaker to see if the power worked. He walked through the house and checked switches and outlets to see if the power worked. *Id @ p. 96 lns 9-15.*

Shortly after Peak and Prairie's owner left the residence, the house caught fire. Travelers is seeking damages from Peak and Prairie whose responsibility included making sure that fixtures had light bulbs and that they were working. Travelers apparently contends that Peak and Prairie had an obligation to find hidden fixtures that had been shipped by the manufacturer in a manner that violated the applicable electric code.

[¶]     Travelers has moved this court for an order as to five different motions in limine. Peak and Prairie will address each of these motions in the order that they were raised in Plaintiff's motion and brief.

## Law and Argument

**1. This court should not find as a matter of law that the fire was caused by an uninstalled attic light fixture with Bulb, which was Energized and Ignited Nearby Combustibles.**

[¶]     Although a portion of the Plaintiff's statement is undisputed, it is disputed as to what caused the light bulb to ignite the combustibles and why it did so.  For instance, it is disputed if the origin was the insulation or the nearby wood.  It is disputed as to how soon the combustibles were ignited.  Thus, although the location of where the fire began, and the believed ignition source are not disputed, there is more to the cause and origin discussion than Plaintiff leads this court to believe which is in dispute.  To instruct the jury as requested by Plaintiff is not accurate.  Defendant would agree to stipulate that the fire was caused because the manufacturer shipped the modular home with a fixture (heat source) that contained a high energy light bulb with two on/off switches in the on position in insulation that allowed the high energy light bulb to quickly reach temperatures that were sufficient to ignite the combustible materials it had placed the fixture into and near.  Unless the Plaintiff can stipulate to those additional facts as to causation, that is a question for the jury to determine.

In other words, although the source of the fire, high energy light bulb, is undisputed.  The cause of why that light bulb started the fire is.

**2. Peak and Prairie did not have notice that this particular home had been shipped with a light fixture that had been moved and hidden under insulation in an attic access.**

[¶]     Travelers has attempted to mislead this court as to the issue of Peak and Prairie's knowledge of the existence of this light fixture.  In fact, the clear testimony makes clear that Peak and Prairie was not aware of this fixture.

[¶]   To better understand this issue, it is necessary to briefly explain the relationship of all the parties and the scope of the project that was going on at the time this fire occurred. Peak and Prairie had been contracted to set up approximately 24 modular homes that Traveler's insured was installing in a development located in Dickinson, North Dakota. *Rasmussen deposition p. 38 Lns 12-15.* Carl Rasmussen, the principal of Peak and Prairie testified in his deposition that prior to agreeing to do the project he had been provided with plans and had prepared a bid based on those plans. The original plans contained two designs of homes. The floor plan and electrical schematics were almost identical except that one was a left handed floor plan and the other was a right handed floor plan. *Id @ p.39 Lns 5-8.*

[¶]   However, at some point during the project, Traveler's insured decided that the floor plan needed to be changed. Importantly as it relates to this case, in addition to changing the floor plan, the electrical components were changed and the attic light's location was changed, as was the access to the attic. *Rasmussen @ p. 88 lns 8-24, see also Jones pgs. 42-43.* When Traveler's insured made these changes it failed to inform Peak and Prairie that the location of the attic light had been changed. *Rasmussen @ p. 133, lns 1-10.* They also did not notify Peak and Prairie of which homes consisted of the new design and which homes consisted of the old design.

[¶]   Peak and Prairie would work on numerous homes at various stages of set up. *Rasmussen @ p. 45, Lns 10-25.* As the homes arrived, Peak and Prairie would leave whatever home they may be working on and assist in unloading and doing the original setting of the homes on the foundation. Since the homes were shipped in two pieces, when they arrived a crane was used to take each half of the house off the trailer they were shipped to the location on and then place them on the foundation and bolt the two halves of the home together. Once the original set had been done, Peak and Prairie

would generally not do any further work on that particular home until after the local utility had supplied the home with electricity (energized the home).

[¶]     Rasmussen testified that after the fire one of Peak and Prairie's employees during conversations as to cause, mentioned that previously he had found in a home a fixture in the attic that was in a crawl space. *Rasmussen @ p. 113, lns 8-16*. That fixture however had the switch mounted and was in the new design home. He did not know that the house that caught fire was a new design home.

[¶] Similarly, the electrical designs that Traveler's has claimed were provided with the home did not depict the light fixture in the location that it was actually located. *See Ex. 4 to Jones deposition.* Instead, if there was even a light fixture identified, it was located near the garage area that had not been covered and was used for access. *Id. at 42 and 43*. This area could be easily seen from the power panel, and there was no light coming from the area. The original design also had the fixture mounted on a rafter. To claim as a matter of law that because an employee had found a home with the new design that had a light switch visible means that Peak and Prairie should have knowledge that a home that was not even identified as having the new design that there was a light fixture and switch hidden under insulation in an attic access, does not follow. It is a question of fact whether the circumstances here justify some sort of knowledge to Peak and Prairie and the clear facts indicate the corporation could not have known, since it was not even known this was a new design home.

Peak and Prairie's claims are only arguments, and the facts do not warrant an instruction Peak and Prairie had notice.

### 3. Defendant's experts should not be excluded.

[¶]     Defendant does not intend to call Randy Harris as an expert. Thus, it will not address Plaintiff's arguments as to why he should be excluded.

As to Mark Evanger, Plaintiff's arguments are misplaced. All information including his CV were disclosed. His CV lists his qualifications. Thus, its claim he was not properly disclosed is inaccurate. *See attached disclosure of his CV.*

[¶] As it relates to his testimony, Plaintiff mischaracterizes his opinions. He does not need to be familiar with the modular home industry to know whether or not the actions of placing a fire source onto a flammable object is negligence. His experience as a fire investigator and understanding the cause of fires allows him to make those conclusions and opinions. Similarly, his experience and knowledge of electrical codes for fire investigation allows him to identify the proper codes and testify as to their applicability and the necessity of following them for fire prevention.

As to a contractors obligation in constructing a home, and the need to prevent fire hazards, it is not knowledge of the building industry that is required but of fire prevention. Similarly, his knowledge of electrical codes as to warnings also qualifies him to set forth obligations of parties relating to properly identifying and warning of those hazards. These are requirements that apply to all industries to prevent fires.

[¶]   Daubert does not require his testimony be excluded, at least without a Daubert hearing at Plaintiff's expense. In fact, without requesting a Daubert hearing, Plaintiff's motion is improper.

### 4. The overwhelming evidence in this case indicates other entities' negligence is the cause of this fire.

Incredibly Travelers has also requested that the Peak and Prairie be prohibited from asking a jury to allocate fault to others who are not a party to this action because expert witness testimony is required to explain to a jury whether "common practices" and "duties" have been violated and whether those violations "caused the damages". Travelers goes on to note that because Peak

6

and Prairie has not disclosed an expert witness to testify as to these standards, Peak and Prairie should be prohibited from alleging other non parties have fault in this action.

First, it should be noted that if Traveler's theory was accurate, it too has not identified any experts in the manufactured homes industry to testify as to what "common practice" or "duty" Peak and Prairie violated which "caused the damages" alleged by Travelers in this action. *See Traveler's expert witness disclosure attached.* Thus, if Travelers' theory of evidence is correct, Peak and Prairie similarly moves that Travelers be prohibited from alleging Peak and Prairie was at fault for this fire, and the case be dismissed. Although Peak and Prairie may have been contracted to perform certain functions on this project, Travelers has not produced any expert testimony to define the "common practice" or "industry standard" as to how those functions are to be performed. Similarly, it has not identified any expert testimony regarding the set up procedure. If the standard is as asserted by Travelers, then its failure to identify experts as to these issues would similarly prohibit it from claiming Peak and Prairie was negligent. That in fact is the case, as there has been no evidence presented, expert or otherwise, that would require Peak and Prairie to search for an unidentified fire ignition source hidden in the attic.

[¶] Assuming Traveler's standard is not the correct the overwhelming evidence in this case is that Wardcraft, an entity who was not sued in this action and Steele Services, another entity who was not sued, caused this fire. It is undisputed Wardcraft manufactured the subject home, and shipped it to North Dakota. In constructing the home, they acknowledged an obligation to comply with electrical codes of the State of North Dakota. *Jones pg 26, lns 11-15.* Shipping a home in violation would be evidence

of negligence. It is undisputed the home as shipped violated electrical code. *Jones pg 55, lns 12-16.* Similarly as it relates to Wardcraft and Steele Services, it is clear that a change was made in the location of the attic access and the attic light. The drawings depicting the location of the attic light did not indicate the light was located in a different position or even that there was a light. *See Jones pgs 42-43.* Per the manufacturer of the home, Wardcraft, if there were any changes, the changes had to be made known by the distributor, Steel Services, to the set up crew. *Jones at pg 46.* It was not.

A jury's responsibility is to determine if a party's actions were negligent. They are required to use their common sense. Whether these actions and others constitutes negligence is for them to decide. There has been a clear basis for this negligence established. This is not a subject matter that a common layperson could not understand. Whether laying a heat source in flammable material and not identifying its location is negligence is frankly not complicated. They do not need to be told by any experts whether these types of actions were negligent, regardless of what the industry standard may be. Common sense tells you shipping a product that can cause a fire once energized is negligence. Even if it would be required, Wardcraft's testimony that locating a heat source next to a flammable object would be a violation of code, and its testimony that shipping a fixture with its on/off switch in the on position would not be its standard operating procedure would also establish by its own admission the industry standard had been violated. *See Jones deposition at pgs 55-56.*

Similarly, as it relates to the fire hydrant, the evidence is clear the Dickinson Fire Department could not connect its hoses to the fire hydrant because the fire hydrant contained the wrong type of coupler. Dickinson Fire Department only uses one type of coupler city wide. If the developer who was required to put in hydrants uses the wrong coupler, common sense is all that is required to determine whether or not the developer

8

has fault if the fire department can't put out the fire because it has no water available to fight the fire. The developer did not follow the city code. Violation of a law is evidence of negligence.

## Conclusion

For the reasons stated herein, Peak and Prairie's Motion in Limine should be denied.

Dated this 6th day of November, 2015.

        SCHWEIGERT, KLEMIN & MCBRIDE, P.C.
        116 North 2nd Street
        P.O. Box 955
        Bismarck, ND 58502-0955
        (701) 258-8988
        Fax (701) 258-8486
        Attorneys for Defendant, Peak and Prairie Homes, LLC

By _____
        David D. Schweigert
        ND State Bar ID #05123
        dschweigert@bkmpc.com

9

*Curriculum Vitae*

**Mark N. Evanger CFI (Retired)**
Certified Fire Investigator, International Association of Arson Investigators
Engineering Technician
Topographical Surveyor and Computer Aided Design "CAD" Operator, Draftsman

## Education

Certificate of Drafting,
Lake Region Junior College
Devils Lake, ND
Architectural Drafting Technology and *Site Survey* 1974-1975

## Employment History

Employed by *North Central Consultants, Ltd.* 1975 to January 1, 2005.
Employed by *EngTech, Inc.* January 1, 2005 to Current:
Vice President of **EngTech, Inc.**

## In House Training

37+ Years of Mechanical, Electrical, Civil and Architectural Design AutoCad Drafting. Civil & Architectural Project On-Site Inspections, Surveys & Fire Investigations, Civil & Architectural & Fire Investigation Site Survey, Civil & Architectural Project Management.

## Professional Memberships

International Association of Arson Investigators (I.A.A.I.) - Member No. 25231
I.A.A.I. North Dakota Chapter - Member No. ND123
I.A.A.I. Minnesota Chapter
National Association of Fire Investigators NAFI
Investigative Engineers Association of America
Investigative Engineers Association of America, North Dakota Affiliate
Associate Member NFPA


**I.A.A.I Certified 10/06/2006  Certificate No. 64-006**
**I.A.A.I Re-Certified 10/06/2016  Certificate No. 64-006**

# Training Seminars and *Tested* Programs Attended in Fire Investigation and Related Fields.

## Laboratory Seminars

Fire Findings **16 hour Tested Course October, 2011** Benton Harbor, Mi.
*Investigating Solid Fuel-Burning Appliance Fires.*

Armstrong Forensic Laboratory, Inc **1.0 hour Tested Course September, 2011** Fargo, ND
In conjunction with the NDIAAI annual conference. **Fire Debis Analysis-From the Laboratory to the Final Report.**

Armstrong Forensic Laboratory, Inc. **1.0 hour Tested Course September, 2011** Fargo, ND
In conjunction with the NDIAAI annual conference. **Physical Evidence Labeling and Handling.**

Armstrong Forensic Laboratory, Inc **1.5 hour Tested Course September, 2011** Fargo, ND
In conjunction with the NDIAAI annual conference. **Identifying the Source.**

Fire Findings **16 hour Tested Course May, 2009** Benton Harbor, Mi.
*Residential Electricity Fires in Laboratory.* **High Resistance Faults**.

Investigative Engineers of America **21 CE Units, 32 hours April, 2001** Ft. Lauderdale, Fl.
*Report Writing, Subrogation of Claims, Upcoding, Scope and Damage, Mitigation Measures, Cost Control Measures, Cause and Origin, Replacement Costs. Expert Witnessing Techniques, including Preparing for Depositions, Courtroom Testimony Preparation, Preparation before Juries, Documentation, and Preparation of Visual Aids. Legal Considerations, including Consent, Courtroom Demeanor, Scene Security, Preservation of Evidence, Contamination and Cross Contamination.*

Peter Vallas & Associates **32 hours April, 2001** Ft. Lauderdale, Fla.
*Fire Investigation. Fire Behavior. Arson Tactics*

Lee Cole and Associates **24 hours December, 2001** New Orleans, La.
Vehicle Fire Investigations class and in field demonstration. Hands on field investigation of *Auto Fires and Arson Burns.*

Fire Findings **16 hour course April, 2003** Benton Harbor, Mi.
*Investigation of Gas and Electrical Appliances (hands on) in Laboratory setting of numerous Appliance Burns.*

## IAAI State Sponsored Seminars

I.A.A.I. North Dakota Chapter  **16.5 Hour Tested Course**  September, 2011 Fargo, North Dakota
*Progressive Burn Pattern Development in Post Flashover Fires, Fire Dynamics above Floor Level, NFPA 921 2011 Updates, Forensic Evaluation of Vehicle Fuels & Lubricants.*

I.A.A.I. Minnesota Chapter  **20 Hour Tested Course**  March, 2007 Detroit Lakes, Minnesota
*Ethnic Group Interpretations, fire Deaths, Burn Patterns on Bodies, Serial Arsonists, Case Preparation, Computer Forensics, Fire Patterns/Evidence Collection, Testimony Under Fire, Vehicle Fires.*

I.A.A.I. Minnesota Chapter   **20 Hour Tested Course**   March, 2006 Detroit Lakes, Minnesota
*Juvenile Firesetters, Ethics, Meth Lab Investigation, Appliance Fire, Fireplace and Wood Stoves,*

I.A.A.I. Minnesota Chapter  **20 Hour Tested Course**  December, 2005 Anoka, Minnesota   *Court Room Testimony Course*

I.A.A.I. North Dakota Chapter  **20 Hour Tested Course**  August, 2005 Fargo, ND
*Fire and Arson Investigation Techniques*

I.A.A.I. South Dakota Chapter  **16 hours**  September, 2003 Pierre, SD
*Fire and Arson Investigation – Vehicles. In class and hands-on demonstrations of burned parts and equipment.*

I.A.A.I. South Dakota Chapter  **16 hours**  September, 2002 Pierre, SD
*Fire and Arson Investigation – Buildings. In class and hands-on demonstrations.*

## IAAI Supporting Seminars & Courses

Bismarck State College - **Two 2 week** courses Bismarck-Mandan, ND
AutoCad Computer Aided Drafting Classes. *Scene and Site Layout.*

Eagle Point Engineering Software – **Two 3 day** courses  2002 Bismarck, ND
Eagle Point Software Drafting Classes.  *Scene and Site Layout.*

Eagle Point Engineering Software – Two 3 day courses 1998 Williston, ND
Eagle Point Software Drafting Classes. *Scene and Site Layout.*

## IAAI Sponsored - CFITrainer.net Web Based Seminars Participations

CFITrainer.net Web based seminar **4 Hour Tested Course** – August, 2011
**In conjunction with I.A.A.I.**
*An Analysis of the Station Nighclub Fire*

CFITrainer.net Web based seminar **4 Hour Tested Course** – July, 2011
**In conjunction with I.A.A.I.**

*__Managing Complex Fire scene Investigations__*

CFITrainer.net Web based seminar **2 Hour Tested Course** – July, 2011
**In conjunction with I.A.A.I.**
*__How First Responders Impact the Fire Investigation__*

CFITrainer.net Web based seminar **4 Hour Tested Course** – July, 2011
**In conjunction with I.A.A.I.**
*__Physical Evidence at the Fire Scene__*

CFITrainer.net Web based seminar **4 Hour Tested Course** – July, 2011
**In conjunction with I.A.A.I.**
*__Doumenting the Event__*

CFITrainer.net Web based seminar **4 Hour Tested Course** – July, 2011
**In conjunction with I.A.A.I.**
*__Fundamentals of Interviewing__*

CFITrainer.net Web based seminar **3 Hour Tested Course** – July, 2011
**In conjunction with I.A.A.I.**
*__DNA__*

CFITrainer.net Web based seminar **4 Hour Tested Course** – Dec, 2010
**In conjunction with I.A.A.I.**
*__Explosion Dynamics__*

CFITrainer.net Web based seminar **4 Hour Tested Course** – Sept, 2010
**In conjunction with I.A.A.I.**
*__Motive, Means and Opportunity: Determining Responsibility in an Arson Case__*

CFITrainer.net Web based seminar **3 Hour Tested Course** – Sept, 2010
**In conjunction with I.A.A.I.**
*__Electrical Safety__*

CFITrainer.net Web based seminar **4 Hour Tested Course** – Sept, 2010
**In conjunction with I.A.A.I.**
*__Understanding Fire Through the Candle Experiments__*

CFITrainer.net Web based seminar **4 Hour Tested Course** – Sept, 2010
**In conjunction with I.A.A.I.**
*__Investigating Fatal Fires__*

CFITrainer.net Web based seminar **5 Hour Tested Course** – July, 2010
**In conjunction with I.A.A.I.**

***Wildland Fires Investigation***

CFITrainer.net Web based seminar **4 Hour Tested Course** – July, 2010
**In conjunction with I.A.A.I.**
***Evidence Examination: What Happens in the Lab?***

CFITrainer.net Web based seminar **3 Hour Tested Course** – July, 2010
**In conjunction with I.A.A.I.**
***Fundamentals of Residential Building Construction***

CFITrainer.net Web based seminar **4 Hour Tested Course** – January, 2010
**In conjunction with I.A.A.I.**
***Fire Investigator Scene Safety***

CFITrainer.net Web based seminar **4 Hour Tested Course** – January, 2010
**In conjunction with I.A.A.I.**
***Insurance and Fire Investigation***

CFITrainer.net Web based seminar **4 Hour Tested Course** – November, 2009
**In conjunction with I.A.A.I.**
***Introduction to Evidence***

CFITrainer.net Web based seminar **4 Hour Tested Course** – October, 2009
**In conjunction with I.A.A.I.**
***A Ventilation Focused Approach to the Impact of Building Structures and Systems on Fire Development***

CFITrainer.net Web based seminar **4 Hour Tested Course** – October, 2009
**In conjunction with I.A.A.I.**
***Post Flashover Fires***

CFITrainer.net Web based seminar **4 Hour Tested Course** – October, 2009
**In conjunction with I.A.A.I.**
***Critical Thinking Solves Cases***

CFITrainer.net Web based seminar **3 Hour Tested Course** – October, 2009
**In conjunction with I.A.A.I.**
***Effective Investigation and Testimony***

CFITrainer.net Web based seminar **4 Hour Tested Course** – October, 2009
**In conjunction with I.A.A.I.**
***Investigating Motor Vehicle Fires***

CFITrainer.net Web based seminar **4 Hour Tested Course** – October, 2009

**In conjunction with I.A.A.I.**
***Arc Mapping Basics***

CFITrainer.net Web based seminar **4 Hour Tested Course** – August, 2008
**In conjunction with I.A.A.I.**
***Digital Photography and the Fire Investigator***

CFITrainer.net Web based seminar **4 Hour Tested Course** – August, 2008
**In conjunction with I.A.A.I.**
***The Scientific Method for Fire and Explosion Investigation***

CFITrainer.net Web based seminar **3 Hour Tested Course** - July, 2005
**By CFITrainer.net in conjunction with I.A.A.I.**
***Ethics and the Fire Investigator***

CFITrainer.net Web based seminar **2 Hour Tested Course** - June, 2005
**By Guy E. Burnette Jr. in conjunction with I.A.A.I.**
***MagneTek: A Case Study in the Daubert Challenge***

CFITrainer.net Web based seminar **4 Hour Tested Course** - June, 2005
**By Dan Madrzykowski in conjunction with I.A.A.I.**
***Introduction to Fire Dynamics and Modeling***

## Court Room Testimony and Depositions

### FIRE RELATED DEPOSITIONS

2008 Bismarck, North Dakota
**Farmers Union Insurance vs. John Deere**
Expert Witness for Farmers Union Insurance
John Deere Combine Fire. Garrison, North Dakota
Settled out of court

2008 Bismarck, North Dakota
**Farmers Union Insurance vs. John Deere**
Expert Witness for Farmers Union Insurance
John Deere Combine Fire. Redvers Saskatchewan, Canada
Settled out of court

2009 Bismarck, North Dakota
**Big Sky Batteries vs. Dell Computers**
Expert Witness for Big Sky Batteries
Office Fire Williston, ND
Settled out of court.

2009 Bismarck, North Dakota
**Davenport vs. State Farm Insurance**
Expert Witness for Davenport
Dwelling Fire
Jury Trial

2009 Bismarck, North Dakota
**McIlonie Farms vs. CNH America**
Expert Witness for McIlonie Farms
Case Combine Fire
Settled out of court.

2009 Bismarck, North Dakota
**Nodak Mutual vs. Skiftun & Wiesz**
Expert Witness for Nodak Mutual
Hay Barn Fire, Arson

2009 West Fargo North Dakota
**LaCoe vs. DJ Oil**
Expert Witness for DJ Oil
Rapid Propane Ignition
Settled out of court.

## FIRE RELATED COURTROOM TESTIMONY

2009 Bismarck, North Dakota
**Davenport vs. State Farm Insurance**
Dwelling Fire
Expert Witness for Davenport
Jury found for Davenport. Breach of Contract

## NON FIRE RELATED DEPOSITIONS

1995 Bismarck, North Dakota
**City of Kenmare vs. Minnesota Contracting**
Expert Witness for the City of Kenmare
Charge: Breach of Contract
Settled out of court.

2007 Rolla, North Dakota
**Rolla Nursing Home vs. K Plumbing**
Expert Witness for Rolla Nursing Home
Contractor Liability
Judge found for Rolla Nursing Home.

## NON FIRE RELATED COURTROOM TESTIMONY

1998 Bismarck, North Dakota
**Hearing Associates vs. Larson Contractors**
Expert Witness for Larson Contractors
Charge: Contractor Liability
Jury found for Larson Contractors

2007 Rolla, North Dakota
**Rolla Nursing Home vs. K Plumbing**
Expert Witness for Rolla Nursing Home
Charge: Contractor Liability
Jury found for Rolla Nursing Home